UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------- x
DARRYL CRENSHAW,                                                 :
                                                                 :
                            Plaintiff,                           :
                                                                 :
             v.                                                  :    25-CV-479 (SFR)
                                                                 :
OFFICER ROSS, OFFICER ILIADES, OFFICER                           :
JOHN DOE, and CAPTAIN BLACKSTOCK,                                :
                                                                 :
                            Defendants.                          x
---------------------------------------------------------------- 

## **INITIAL REVIEW ORDER**

Plaintiff Darryl Crenshaw, an individual serving a sentence in the custody of the Connecticut Department of Correction ("DOC"),[1] brings a civil rights action *pro se* under 42 U.S.C. § 1983 against four DOC correctional officers who work at Cheshire Correctional Institution ("Cheshire C.I."): Officer Ross, Officer Iliades, Officer John Doe, and Captain Blackstock ("Defendants"). He asserts violations of his rights under the United States Constitution and liability under state common law. He seeks both damages and a declaratory judgment.

The Prison Litigation Reform Act requires that I conduct an initial review of this complaint because Crenshaw is an incarcerated plaintiff who seeks relief from government employees. 28 U.S.C. § 1915A(a). I have thoroughly reviewed all factual allegations in the

---

[1] I may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function shows that Crenshaw was sentenced on April 6, 2015, and is now housed at MacDougall-Walker Correctional Institution.

Complaint. For the reasons explained below, I find that Crenshaw may proceed to service on several of the claims he has asserted in the Complaint.

I.      **BACKGROUND**

I accept as true the following well-pleaded facts in the Complaint.

On August 29, 2024, Crenshaw was housed at Cheshire C.I. Compl. ¶ 8, ECF No. 1. On that same day, Crenshaw and Officer Ross "had a negative verbal exchange about a cell search" conducted by Ross. *Id.* ¶ 9. During that exchange, Ross threatened to assault and physically harm Crenshaw. *Id.* ¶ 10. While issuing these verbal threats, Ross moved toward Crenshaw in an attempt to commit a battery against Crenshaw, even though Crenshaw had placed his hands behind his back. *Id.* ¶ 11. Ross's threats caused Crenshaw extreme fear of bodily harm and injury. *Id.* ¶ 10.

Captain Blackstock stood between Crenshaw and Ross to prevent Ross from making contact with Crenshaw and committing a battery. *Id.* ¶ 12. While Crenshaw remained standing with his hands behind his back, Blackstock moved Ross backwards. *Id.* During this moving process, Ross appeared to attempt to make contact with Crenshaw and to pick up a trash can. *Id.* Ross seemed to be physically assaulting Blackstock as he continued to make verbal threats of bodily harm to Crenshaw and the entire unit. *Id.* ¶¶ 12-13.

During this interaction with Ross, Crenshaw stated that he would file a grievance and federal complaint and would call the State Police to report Ross's conduct. *Id.* ¶ 15. Crenshaw attempted to call the police through use of his tablet, but the number had been disconnected. *Id.*

Crenshaw spoke with the block counselor to request a report to the State Police about Ross's conduct. *Id.* ¶ 16. The counselor responded that he would not assist Crenshaw in making the report but would let Blackstock know. *Id.*

Crenshaw later learned that Blackstock was working to put him segregation. *Id.* ¶ 17. Upon learning this information, Crenshaw locked himself in his cell, blocked the window, and demanded that a camera document his requests for the State Police and mental health staff. *Id.* Blackstock advised Crenshaw that he could call for police involvement and write up individuals from segregation. *Id.* Crenshaw was later brought to segregation at Blackstock's direction. *Id.* ¶ 18.

For his escort to segregation, Officers Doe and Iliades secured Crenshaw in handcuffs. *Id.* ¶ 19. Iliades twisted Crenshaw's handcuffs and bent his wrists, causing severe pain. *Id.* Iliades also stated that following the escort he would take care of Crenshaw's property. *Id.* He stated that he would finish what he started and continued to wrench Crenshaw's wrists. *Id.*

In the segregation unit cell, Crenshaw was forced to kneel on the floor while restrained and handcuffed on a segregation cell mattress. *Id.* ¶ 20. Without "provocation," Doe and Iliades forced Crenshaw's head into a metal protrusion of the cell wall. *Id.*

Under Blackstock's direction, Doe and Iliades forcibly ripped off Crenshaw's clothing, and Iliades then "handled [Crenshaw's body] exceptionally more 'aggressively,' inappropriately so." *Id.* ¶ 21. During this forceful strip search, Crenshaw was calm and cooperative, posing no threat to himself or others. *Id.* ¶ 22. Forceful strip searches are typically reserved for prisoners who are violently uncooperative. *Id.*

Ross wrote Crenshaw a disciplinary report for interfering with safety and security. *Id.* ¶ 23. Crenshaw maintains that the disciplinary report referred to the shake down that was completed before any confrontation occurred. *Id.*

While Crenshaw was confined in segregation, Iliades destroyed Crenshaw's property in retaliation for a prior grievance filed by Crenshaw against Iliades and for Crenshaw's expressed intent to grieve the incident involving Ross's threatening conduct. *Id.* at ¶ 24.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915A, courts must review civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).[2]

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for

---

[2] My review is limited to the federal claims raised in the Complaint. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [a plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). But the court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)).

## III. DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). The Complaint asserts that Defendants violated the Eighth, First, Fourth, and Fourteenth Amendments.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged

5

constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (requiring that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

### A. Eighth Amendment Excessive Force

For a claim of Eighth Amendment excessive force, Crenshaw must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously and sadistically to cause harm," and that the harm done was objectively serious enough to violate Crenshaw's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

Prison officials violate the Eighth Amendment by "failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Delano v. Rendle*, No. 9:13-CV-00070 (NAM/TWD), 2016 WL 4146476, at *11 (N.D.N.Y. July 12, 2016), *report and recommendation adopted*, No. 9:13-CV-70 (NAM/TWD), 2016 WL 4133542 (N.D.N.Y. Aug. 3, 2016) (internal quotation marks omitted).

Crenshaw's allegations indicate that both Iliades and Doe subjected him to harsh treatment and restraints during his escort and cell placement. *See* Compl. ¶¶ 19-20. The use of restraints does not violate the Eighth Amendment unless it lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. *See Delgado v. Bezio*, No. 09-CIV-6899 (LTS), 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011).

For purposes of initial review, Crenshaw's allegations are sufficient to raise an inference that, in escorting and placing Crenshaw in segregation, Doe and Iliades subjected Crenshaw to excessive force without a legitimate safety or security basis. *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order for plaintiff's segregation); *Davis v. Rinaldi*, No. 3:19-CV-504 (CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting plaintiff's claim of excessive force based on placement under in-cell restraints without a legitimate safety or security basis for plaintiff's placement).

Thus, I permit Crenshaw to proceed for damages against Iliades and Doe on his Eighth Amendment claims arising from their use of force (or alternatively, the failure to intervene to prevent the use of force) during the escort and cell placement.

B. **Eighth Amendment Deliberate Indifference**

For claims of indifference to health and safety, an incarcerated plaintiff must plead facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, Crenshaw must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did not act. *See, e.g.*, *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127

7

(2d Cir. 2012) (*per curiam*). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138 (citation omitted).

Crenshaw's allegations suggest Ross acted with deliberate indifference to his health and safety by subjecting him to verbal harassment and threatening physical conduct. The Second Circuit has held that verbal threats alone are not a sufficient basis for an Eighth Amendment claim. *Purcell v. Couglin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *see also Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("[V]erbal harassment, standing alone, does not amount to a constitutional deprivation."). Crenshaw—who describes himself as a victim of childhood abuse—maintains that he suffered "extreme fear" due to Ross's conduct. Compl. ¶¶ 10, 20.

Construing all inferences in Crenshaw's favor, I permit him to proceed for damages on an Eighth Amendment claim against Ross for deliberate indifference to his health and safety. *See Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (instructing district court to consider whether plaintiff's "psychological pain" and subsequent suicide attempt caused by non-physical sexual harassment constituted an "appreciable injury" that was actionable); *Green v. City of New York Dep't of Corr.*, No. 06-CIV-4978 (LTS) (KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (noting that verbal threats may violate the Eighth Amendment when "accompanied by physical force or the present ability to effectuate the threat") (citation and internal quotation marks omitted). Accordingly, I permit Crenshaw to proceed for damages against Ross for deliberate indifference to his health and safety.

### C. Fourth Amendment Claim

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), "inmates do retain a limited right to bodily privacy," *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992). Thus, in the prison context, the Fourth Amendment proscribes unreasonable strip searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016). The following four factors should be considered to decide if a prison search was reasonable: "(1) the scope of the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted." *Harris*, 818 F.3d at 58 (quoting *Bell*, 441 U.S. at 559). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

Crenshaw has sufficiently alleged facts to support an inference he endured an unreasonable search in violation of the Fourth Amendment. Accordingly, I will permit him to proceed for damages against Blackstock, Iliades, and Doe, who were all plausibly involved with an unreasonable strip search of Crenshaw.

### D. First Amendment Claims

"To sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the

9

protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020). An adverse action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Benway v. Aldi*, No. 3:19-CV-208 (VAB), 2020 WL 4433561, at *4 (D. Conn. 2020) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012)). Courts "'must approach prisoner claims of retaliation with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bacon*, 961 F.3d at 542-43 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

The filing of a prison grievance or a lawsuit constitutes protected activity under the first element required to state a retaliation cause of action. *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). An "adverse action," as required by the second element, has been understood as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).

To satisfy the causation element, a plaintiff must allege but-for causation. *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (finding that causation in a First Amendment retaliation claim "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive") (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006). In assessing whether but-for causation has been plausibly alleged, the court looks to "'particularized evidence' that suggests a retaliatory motive, such as 'expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.'" *Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir.

May 29, 2024) (quoting *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995)). The court may also consider temporal proximity between the protected activity and the alleged retaliation. *See A.S. v. City Sch. Dist. of Albany,* 585 F. Supp. 3d 246, 269-70 (N.D.N.Y. 2022).

  Crenshaw advances four separate claims of First Amendment retaliation. He contends that (1) Blackstock retaliated against him by placing him in segregation; (2) Blackstock, Iliades, and Doe subjected him to a retaliatory misuse of force and strip search; (3) Ross issued a retaliatory disciplinary report; and (4) Iliades retaliated against him by destroying his property. Compl. ¶¶ 26-28. I assume for purposes of initial review that Crenshaw's expressed intent to file a lawsuit and grievance and make a police report as well as his prior grievance filed against Iliades are all protected under the First Amendment. I therefore consider whether Crenshaw plausibly alleges that any of the defendants took an adverse action against Crenshaw because of his protected activity.

    **1. Retaliatory Placement in Segregation**

  Crenshaw maintains that Blackstock placed him in segregation due to his expressed intent to file a grievance, federal lawsuit, and police report. Compl. ¶¶ 16, 26. I conclude that Crenshaw's confinement in segregation satisfies the adverse action element.

  Because Crenshaw's allegations suggest that he suffered adverse action shortly after his First Amendment protected expression, I permit Crenshaw to proceed on a First Amendment retaliation claim against Blackstock in his individual capacity.

    **2. Retaliatory Strip Search and Use of Force During Segregation Placement**

  Crenshaw contends that Blackstock, Iliades, and Doe all subjected him to a retaliatory harsh treatment related to his segregation placement and strip search because of his intent to

11

engage in conduct protected under the First Amendment (to file a lawsuit and grievance and make a police report). I determine that Crenshaw's allegations about harsh treatment and a forceful strip search satisfy the adverse treatment for initial pleading purposes.

### a. Doe

As to Doe, no allegations support an inference that he was aware of Crenshaw's expressed intent to file a grievance and a lawsuit or to make police report. Nor do the allegations suggest that he was aware of Crenshaw's prior grievance against Iliades. Thus, I conclude that Crenshaw has not alleged sufficient facts to support an inference that a causal connection exists between his protected conduct and any harsh treatment or force used during the strip search by Doe. *See Bey v. Megget*, No. 3:24-CV-1258 (SVN), 2025 WL 27463, at *5 (D. Conn. Jan. 3, 2025) (dismissing retaliation claims where plaintiff had not alleged a causal connection between protected activity and adverse action because no facts reflected defendant was aware of his protected activity). Thus, I dismiss Crenshaw's First Amendment retaliation claims against Doe.

### b. Iliades

Crediting Crenshaw's allegations, I conclude Crenshaw has sufficiently stated facts to suggest that Iliades subjected him to harsh levels of force and unduly aggressive treatment during his strip search in retaliation for a prior grievance. I permit Crenshaw to proceed for damages on his First Amendment claim that Iliades retaliated against him for his prior grievance.

But no facts indicate that Iliades was aware of Crenshaw's expressed intent to file a grievance and lawsuit and police report about Ross's conduct, and therefore, he has not stated

a plausible causal connection between the adverse treatment and his statement about filing a grievance and lawsuit and making police report.

### c. Blackstock

I conclude that Crenshaw may proceed on a First Amendment retaliation claim against Blackstock because Blackstock directed the forceful strip search of Crenshaw shortly after Crenshaw expressed intent to engage in conduct protected under the First Amendment.

But the Complaint does not suggest that Blackstock was involved with the force imposed on Crenshaw during his escort or cell placement. Accordingly, Crenshaw may not proceed against Blackstock on a claim of retaliatory use of force during the transfer to segregation.

### 3. Retaliatory Disciplinary Report

Crenshaw maintains that Ross charged him with a disciplinary offense shortly after hearing his statement about filing a grievance and lawsuit and making police report. For initial pleading purposes, I conclude that Crenshaw's complaint raises an inference that his disciplinary charges resulted from Crenshaw's protected First Amendment conduct. Accordingly, Crenshaw may proceed on a First Amendment retaliation claim against Ross in his individual capacity.

### 4. Retaliatory Property Destruction

Crenshaw has not described what specific property was destroyed by Iliades. But for purposes of initial review, I assume Crenshaw sustained adverse action as a result of Iliades' destruction of his property. Thus, Crenshaw may proceed for damages on First Amendment violation against Iliades for destroying his property in retaliation for Crenshaw's prior grievance.

### E.  Fourteenth Amendment Property Deprivation

The Due Process Clause of the Fourteenth Amendment protects a plaintiff against the denial of a protected property interest without due process of law. *Ramos v. Malloy*, No. 3:18-CV-615 (VAB), 2018 WL 1936144, at *3 (D. Conn. Apr. 24, 2018). But an incarcerated plaintiff can bring a due process claim for loss of property only if the state has not created adequate post-deprivation remedies. *See Edwards v. Erfe*, 588 F. App'x 79, 80 (2d. Cir. 2015); *Hudson*, 468 U.S. at 533. "The existence of state remedies, therefore, determines whether a Fourteenth Amendment claim for deprivation of property without due process is cognizable in federal court." *Conquistador v. Hannah*, No. 3:19-CV-1293 (KAD), 2019 WL 4346346, at *4 (D. Conn. Sept. 12, 2019).

To the extent Crenshaw advances a Fourteenth Amendment property deprivation, he fails to state a plausible Fourteenth Amendment violation because there is an adequate procedure available to Connecticut prisoners who seek compensation for lost or destroyed property. DOC provides inmates with an administrative remedy procedure relevant to lost or destroyed property or complaints about staff misconduct. *See* A.D. 9.6.; *see also Ramos*, 2018 WL 1936144, at *3 (noting that DOC has established an administrative remedy procedure relevant to a prisoner's lost or destroyed property and citing Directive 9.6(16)(B)). In addition, the State of Connecticut provides adequate post-deprivation remedies for property by permitting an incarcerated individual to bring a claim before the Connecticut Claims Commission, unless there is another administrative remedy for his claim. *See* Conn. Gen. Stat. § 4-142. As the State of Connecticut provides adequate remedies, I dismiss any Fourteenth Amendment property deprivation claim as not plausible.

14

### F. Official Capacity Claims

Crenshaw seeks a declaration that Defendants have violated his constitutional rights as described in his complaint.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)

Crenshaw's allegations do not support an inference that he is subject to any ongoing constitutional violation. Indeed, the Complaint discloses that Crenshaw is no longer held at the correctional facility where Defendants work. Compl. ¶ 3 (noting that events in this lawsuit relate to Crenshaw's time at Cheshire C.I. but that Crenshaw is now held at Macdougall-Walker C.I.). Crenshaw's request for a declaration that Defendants violated his federal constitutional rights in the past is barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding that the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). Furthermore, if Crenshaw were to prevail on his Eighth, First or Fourth Amendment claims, the court necessarily would determine that Defendants had violated his constitutional rights. Thus, a separate award of declaratory relief is unnecessary.

To the extent Crenshaw asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Accordingly, I will dismiss the request for official capacity relief. *See* 28 U.S.C. § 1915A.

## IV.  CONCLUSION AND ORDERS

For the foregoing reasons, I conclude as follows:

(1) Crenshaw may proceed on the following individual capacity claims for:

   a. Eighth Amendment violation against Doe and Iliades arising from their misuse of force (or alternatively, the failure to intervene to prevent the use of force);

   b. Eighth Amendment violation against Ross for deliberate indifference to his health and safety;

   c. Fourth Amendment violation against Blackstock, Iliades and Doe;

   d. First Amendment retaliation by Blackstock, Iliades, and Officer Ross; and

   e. State law claims of assault and battery against Ross.

All other claims, including official capacity claims, are **DISMISSED without prejudice**.

 **Crenshaw has two options as to how to proceed in response to this Initial Review Order:**

If Crenshaw wishes to proceed immediately **only** on the claims against Captain Blackstock, Officer Ross, Officer Iliades and Officer Doe as set forth in paragraph one, he may do so without further delay. If Crenshaw selects this option, he shall file a notice on the docket on or before **January 9, 2026,** informing the court that he elects to proceed with service as to the claims against Captain Blackstock, Officer Ross, Officer Iliades and Officer Doe as set forth in this paragraph. The court will then begin the effort to serve process in the capacity

described above.[3] The court will set a deadline for Crenshaw to identify Officer Doe—using interrogatories or other means—when it issues a Scheduling Order for this action.

Alternatively, if Crenshaw wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint on or before January 9, 2026. An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint. The court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Crenshaw elects to file an amended complaint, the complaint addressed by this Initial Review Order will **not** proceed to service of process on any defendant.

If the court receives no response from Crenshaw before January 9, 2026, the court will presume that Crenshaw wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address**. If Crenshaw changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the court. Failure to do so may result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. Crenshaw should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Crenshaw has more than one pending case, he should indicate all the case numbers in the

---

[3] Crenshaw is not proceeding *in forma pauperis* as he has paid the court filing fee. Nonetheless, in light of Crenshaw's status as an incarcerated self-represented individual, it is in the interest of justice and judicial economy for the court to assist with service of the complaint.

notification of change of address. Crenshaw should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

New Haven, Connecticut
December 8, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge